IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **WENDY L. BROWN and** | : | **CIVIL ACTION** |
| **DAVID H. BROWN,** | : | |
| **Plaintiffs,** | : | |
| | : | |
| v. | : | NO. 06-2868 |
| | : | |
| **LIBERTY MUTUAL FIRE** | : | |
| **INSURANCE,** | : | |
| **Defendant.** | : | |

**M E M O R A N D U M**

**STENGEL, J.**                                                                                          **March 26, 2008**

      This is a bad faith insurance claim arising from an automobile accident that occurred on May 16, 2000.  The plaintiffs, Wendy L. Brown and David H. Brown, assert that the defendant, Liberty Mutual Fire Insurance Company, breached the provisions of its policy and engaged in bad faith conduct relating to their claim for first-party wage loss benefits.  The defendant filed a motion for summary judgment on August 15, 2007arguing that they acted in full compliance with the terms of its policy and properly investigated and paid expenses related to this claim.  For the reasons stated below, I will deny the defendant's motion for summary judgment.

I.     **BACKGROUND**

      This matter arises out of a first-party income loss claim made by Wendy L. Brown, in connection with a motor vehicle accident which occurred on May 16, 2000.  Ms. Brown was the operator of a vehicle that was rear-ended in Allentown, Pennsylvania.  At

all relevant times, Ms. Brown was an insured under LibertyGuard Auto Policy No. A02-281-475064-800 4 (Policy), issued by Liberty Mutual Fire to David H. Brown for the policy period March 12, 2000 to March 12, 2001. This Policy provided coverage for first party medical expenses up to the amount of $10,000 and for first party income loss benefits in the amount of $50,000.

Ms. Brown made a claim for first party medical expenses under the Policy and these expenses were paid by Liberty Mutual Fire up to the amount of the Policy limit. Ms. Brown claims that she requested income loss coverage from the defendant on her own and subsequently through counsel. She contends that she made her first application for lost wages around June 27, 2000 to Liberty Claims adjustor, Gail Porter. Ms. Porter testified that she is obligated to send specific forms for wage verification to treating physicians when there is a claim for lost wages. Ms. Porter admitted that she failed to send these forms and did not request the exact dates of disability from Ms. Porter's treating doctors, Dr. Busch[1] and Dr. Craig.[2]

Liberty Mutual Fire's claim handling procedures also require that when handling the claim of a self employed worker that all information must be forwarded to an auditor to determine wage loss. Ms. Porter acknowledged that she requested and later received tax returns for 1998 and 1999 from Ms. Brown and these documents were never sent to Liberty's auditors. She also failed to send the 2000 tax return to the auditors after being

---

[1] Dr. Busch was Ms. Brown's primary treating physician.

[2] Dr. Craig was Ms. Brown's shoulder surgeon.

on notice that Ms. Brown was submitting these documents in an attempt to prove wage loss. Ms. Porter claimed that she did not send these returns to the auditor because she was waiting for the exact dates of disability from Ms. Brown. Ms. Brown never sent or responded to defendant's repeated request for specific dates of missed work. Subsequently, Ms. Porter closed Ms. Brown's wage loss claim file on March 1, 2002.

On March 12, 2004 counsel for the plaintiff contacted Liberty Mutual Fire via letter asking them to pay the lost wage claim. Ms. Jaime Burrell, a second claims adjuster, reviewed the file shortly thereafter and recognized that some things were missing from the file. Ms. Burrell stated that she did not know why some documents were missing from the file but that she sent out additional forms in accordance with company policy to obtain a wage loss verification from Dr. Busch. However, Ms. Burrell did not call or write to Dr. Craig who had performed shoulder surgery upon the plaintiff to determine if there was any period of medically necessary time lost from work.

On April 29, 2004 plaintiff's counsel sent Ms. Burrell a letter enclosing a correspondence received from Martin Hacker, Ms. Brown's Real Estate Broker, dated July 10, 2002 along with supporting commission logs. The letter from Mr. Hacker stated that Ms. Brown is one of the top realtors in the Lehigh Valley and that the $75,000 estimated wage lose for 2000 and 2001 was quite conservative. After reviewing the file, Ms. Burrell referred the matter to Ed Hoffman, the supervising auditor, for review.

On June 23, 2004, Ms. Burrell received the APS doctor's reporting form from Dr. Busch indicating that the dates of disability for his treatment were from June 20, 2000

through August 14, 2000.  During this time, Ms. Brown could perform light duty if that option was available.  This information was never forwarded to Michael Brown, the claims auditor.  In addition, Ms. Burrell did not request the disability and wage loss information from Dr. Craig for another 20 months.  Dr. Craig responded promptly to the request and indicated that Ms. Brown was disabled from March 1, 2001 through May 1, 2001.

Ms. Burrell next contacted plaintiff's counsel on September 17, 2004 again requesting the plaintiff's exact dates of lost employment and what wage loss was suffered.  Plaintiff's counsel then instructed Ms. Burrell that they could order the 3rd party trial transcript if they needed to know the exact dates as opposed to simply forwarding on the dates or the trial transcript himself.  He instead warned the Liberty Mutual Fire that he would file a bad faith suit against them if they did not order the transcript.  These transcripts were never ordered.

On October 4, 2004 counsel for plaintiff called Ms. Burrell and advised her that a bad faith suit would be filed for the mishandling of the lost wage claim.  On that same day, Ms. Burrell received a preliminary wage finding from the auditor Michael Brown finding no loss of income.  This was allegedly reviewed by her team manager, John Pyott, and a letter was sent to plaintiff's counsel on October 8, 2004 indicating that the preliminary wage audit did not show any loss of income.  Mr. Pyott claims that he did not review the letter and that he would not have approved a letter which misrepresented Ms. Brown's wage loss determination.  Regardless, Ms. Brown's counsel was sent a letter

stating that after reviewing Ms. Brown's tax returns from 1998 to 2000 there was no indication of any loss of income and if any such documentation becomes available that it should be forwarded to Liberty Fire Mutual for reconsideration.

On the other hand, the defendant claims that Ms. Brown made references to a claim for first party wage loss benefits, but neither she nor her attorneys ever established that she had sustained a wage loss. As a result, Liberty Mutual Fire did not pay her wage loss claim. They believe they fully complied with their obligations under the Policy and acted properly handling this claim.

Liberty Mutual Fire claims that Ms. Brown was required to show that she sustained a loss of income and that despite its representatives continued inquiries regarding this claim, the plaintiff simply did not establish this loss. The plaintiff provided tax returns and some additional documents, but these records showed that her earnings increased after the accident. Further, Liberty Mutual Fire received no information regarding the specific days that Ms. Brown missed work. They made a reasonable inquiry and concluded that Ms. Brown was not entitled to first party income loss benefits.

II.     **STANDARD OF REVIEW**

Summary judgment is appropriate when "there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). The moving party initially bears the burden of showing the absence of a genuine issue of material fact. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Where the non-moving party bears the burden of proof on a particular issue at trial, the

moving party's initial Celotex burden can be met simply by demonstrating "to the district court that there is an absence of evidence to support the non-moving party's case." Id. at 325.  A fact is "material" only when it could affect the result of the lawsuit under the applicable law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986), and a genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the non[-]moving party."  Id.  The moving party must establish that there is no triable issue of fact as to all of the elements of any issue on which the moving party bears the burden of proof at trial.  See In re Bessman, 327 F.3d 229, 237-38 (3d Cir. 2003) (citations omitted).

After the moving party has met its initial burden, "the adverse party's response, by affidavits or otherwise as provided in this rule, must set forth specific facts showing that there is a genuine issue for trial."  FED. R. CIV. P. 56(e); see also Williams v. West Chester, 891 F.2d 458, 464 (3d Cir. 1989).  A motion for summary judgment looks beyond the pleadings and factual specificity is required of the party opposing the motion.  Celotex, 477 U.S. at 322-23.

The non-moving party may not merely restate allegations made in its pleadings or rely upon "self-serving conclusions, unsupported by specific facts in the record."  Id.  Rather, the non-moving party must support each essential element of its claim with specific evidence from the record.  See id. If the parties' evidence contradicts, the non-moving party's evidence must be taken as true.  Pastore v. Bell Tel. Co., 24 F.3d. 508, 512 (3d Cir. 1994).

A district court analyzing a motion for summary judgment "must view the facts in the light most favorable to the non-moving party" and make every reasonable inference in favor of that party.  Hugh v. Butler County Family YMCA, 418 F.3d 265, 267 (3d Cir. 2005) (citations omitted).  Summary judgment is therefore appropriate when the court determines that there is no genuine issue of material fact after viewing all reasonable inferences in favor of the non-moving party.  See Celotex, 477 U.S. at 322.

III.   **DISCUSSION**

    A.   Breach of Insurance Contract Claim

Liberty Mutual Fire contends that they are entitled to summary judgment on the plaintiff's breach of contract claim.  Liberty Mutual Fire maintains that they were not obligated to pay Ms. Brown's first party income loss claim because the plaintiff has not presented evidence of specific days of work missed or an actual loss of gross income to support her claim for income loss benefits.

An injured person may recover income loss benefits by showing that "but for" the accident, he or she would have worked and earned income.  Sakol v. Nationwide Mutual Insurance Co., 2007 WL 1811215 (M.D. Pa. June 21, 2007).  Recovery of income loss benefits based upon actual loss of gross income requires only that the loss of income be real, that is that it have "a valid objective existence as opposed to that which is merely theoretical or possible."  Id. (Citing Black's Law Dictionary (5th ed. 1979)).  Under this standard, there can be no recovery for lost income merely because there has been a loss of

earning capacity.  Id.  Rather, recovery must be based upon an actual loss of income which would have been earned "but for" injuries received in the accident.  Id.

Viewing the facts in the light most favorable to the plaintiff, there is sufficient evidence to conclude that there is a genuine issue of material fact.  The plaintiff has presented evidence in support of her claim that she lost real income that would have been earned if not for the injuries sustained from the accident.  The plaintiff testified in the third-party case, Brown v. Lamson, that after the accident she missed "at least two to three weeks conservatively."  She later testified that in 2001, after her surgery, she was out of work at least two months and in 2002 she missed approximately two more months due to fatigue from the medication.  Ms. Brown clearly stated under oath that she missed a significant amount of time from work which resulted in lost income.

Ms. Brown is a self employed real estate agent.  Her real estate broker, Martin Hacker, sent a letter along with commission logs stating that Ms. Brown lost conservatively $75,000 in wages in 2000 and 2001.  These materials were sent to Liberty Mutual Fire on July 10, 2002.  Ms. Brown also sent Liberty Mutual Fire her tax returns from 1999 to 2002 as requested by the claims department.

Subsequently on June 23, 2004, Ms. Burrell received the APS doctor's reporting form from Dr. Busch indicating the dates of disability for his treatment were from June 20, 2000 through August 14, 2000.  Furthermore, Dr. Craig, who performed surgery on the plaintiff, sent a letter responding to Liberty Mutual Fire's request and stated that Ms. Brown was disabled from March 1, 2001 through May 21, 2001.

Based on the evidence presented by the plaintiff, a reasonable jury could conclude that as a result of the accident the plaintiff suffered an actual loss of gross income. Accordingly, I recommend that the defendant's motion for summary judgment on the breach of contract claim be denied.

**B.     Bad Faith Claim**

In Pennsylvania, bad faith actions against an insurance company are governed by Pennsylvania's Bad Faith Statute, 42 Pa. C.S.A. § 8371, which provides:

> In an action arising under an insurance policy, if the court finds that the insurer has acted in bad faith toward the insured, the court may take all of the following actions:
>
> 1) Award interest on the amount of the claim from the date the claim was made by the insured in an amount equal to the prime rate of interest plus 3%.
>
> 2) Award punitive damages against the insurer
>
> 3) Assess court costs and attorney fees against the insurer.

42 Pa. C.S.A. § 8371 (2005).  Bad faith on the part of an insurer is any frivolous or unfounded refusal to pay proceeds of a policy; it is not necessary that such a refusal be fraudulent. Leo v. State Farm Mutual Automobile Insurance Co., 1996 WL 37827 (E.D. Pa. Jan. 25, 1996). Bad faith imports a dishonest purpose through some motive of self-

interest or ill will; mere negligence or bad judgment is not bad faith.  Id.

Bad faith must be proven by clear and convincing evidence.  Smolinsky v. State Farm Insurance Co., 2000 WL 1201384 (E.D. Pa. Aug. 8, 2000).  To recover a plaintiff must show that the defendant did not have a reasonable basis for denying benefits under the policy and that the defendant knew or recklessly disregarded its lack of a reasonable basis for denying the claim.  Leo, 1996 WL 37827 at 2.

The defendant is not entitled to summary judgment on Ms. Brown's bad faith claim.  There is a genuine issue of material fact as to the manner that Ms. Brown's wage loss claim was handled.  A reasonable jury could find that Liberty Mutual Fire acted in bad faith.

It is clear that Liberty Mutual Fire did not follow through with Ms. Brown's income loss claim when it was originally filed in June of 2000.  Ms. Gail Porter, claims adjuster, testified that she was obligated to send wage and salary verification to Ms. Brown's treating physicians and that she failed to do so.  Further, Liberty Mutual Fire's handling procedures also require Ms. Porter to send all information regarding Ms. Brown's claim to a claims auditor since she is self-employed.  Ms. Porter did not send this information to a claims auditor.

However, Ms. Ported did repeatedly request for Ms. Brown and her attorney to forward along to them the exact dates of Ms. Brown's work absence.  Ms. Porter claims that she did not send out the proper forms to the treating physicians because she was

waiting for Ms. Brown to send her a list of specific days missed from work.  Liberty Mutual Fire also requested that Ms. Brown send them her tax returns from 1998 to 2000 for review.  The documents were reviewed and it was concluded that since Ms. Brown's income continued to increase Liberty Mutual Fire would need more information to base their wage loss claim decision. Ms. Brown failed to send this information to Liberty Mutual Fire leading them to close the claim March 1, 2002 with the understanding that if more information became available Liberty Mutual Fire would reopen the claim.

Two years later counsel for the plaintiff contacted Liberty Mutual Fire and requested that they pay the wage loss claim.  At this time, Liberty Mutual Fire assigned a new claims adjuster, Jamie Burrell, who reviewed the file in full and sent out additional forms to obtain wage loss verification from Dr. Busch.  Shortly thereafter, counsel for the plaintiff sent a letter to Ms. Burrell from Mr. Hacker who claimed that Ms. Brown missed out on work and lost a significant amount of income.  The letter was forwarded to a supervising auditor for review.

Ms. Burrell received the wage loss claims from both of Ms. Brown's treating physicians and then contacted plaintiff's attorney to inquire about more specific dates of lost employment.  Plaintiff's counsel then instructed Ms. Burrell that she could order a 3rd party trial transcript if they needed to know more specific dates.  These transcripts were never ordered and plaintiff's attorney never forwarded them to Liberty Mutual Fire. Liberty Mutual Fire's auditor, Michael Brown then sent a preliminary wage loss report to Ms. Burrell who forwarded it to Ms. Brown's attorney finding that Ms. Brown had no lost

income.  Ms. Burrell sent this letter to Ms. Brown knowing that Mr. Brown's audit was not complete and that this claim was merely in suspense.

This straightforward wage loss claim has been unresolved since June of 2000.  The initial filings were mishandled and not maintained in the regular course of business.  Even after Ms. Brown submitted her tax returns, her broker's statement of missed work and lost income, and after all the wage loss forms were completed by Ms. Brown's physicians, Liberty Mutual Fire still failed to process her wage loss claim.

There is a genuine issue of material fact as to Liberty Mutual Fire's motives.  The long delay and mishandling of Ms. Brown's income loss claim may rise above mere negligence to bad faith.  Whether Liberty Mutual Fire's refusal to pay the proceeds of Ms. Brown's policy was done for a dishonest purpose or through some motive of self interest resulting in bad faith is a question for the jury.  Viewing the facts in the light most favorable to the plaintiff, a reasonable jury could find that Liberty Mutual Fire acted in bad faith.  Liberty Mutual Fire's motion for summary judgment is denied.  An appropriate order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **WENDY L. BROWN and** | : | **CIVIL ACTION** |
| **DAVID H. BROWN,** | : | |
| Plaintiffs, | : | |
| | : | |
| v. | : | **NO. 06-2868** |
| | : | |
| **LIBERTY MUTUAL FIRE** | : | |
| **INSURANCE,** | : | |
| Defendant. | : | |

## O R D E R

**STENGEL, J.**

**AND NOW**, this 26th day of March, 2008, upon consideration of defendant's Motion for Summary Judgment (Document #32) and the plaintiff's response thereto, it is hereby **ORDERED** that the motion is **DENIED**.

BY THE COURT:


/s/ Lawrence F. Stengel
LAWRENCE F. STENGEL, J.